UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────

WALTER J. HENDRIX,

        Plaintiff,

   -vs-

PACTIV LLC,

        Defendant.

**DECISION and ORDER**

**No. 6:19-cv-06419-MAT**

─────────────────────────────

WALTER J. HENDRIX,

        Plaintiff,

   -vs-

MASIS STAFFING SOLUTIONS LLC, TODD
COMFORT, OTTO PINA, JANY GONZALEZ,
JAYE DIAZ, FRANK BATTAGLINI,

        Defendants.

**DECISION and ORDER**

**No. 6:19-cv-06624-MAT**

─────────────────────────────

## I.    Introduction

Walter Hendrix ("Hendrix" or "Plaintiff"), proceeding pro se, instituted two actions in this Court. First, on June 7, 2019, he commenced an action against Pactiv LLC ("Pactiv"). See Hendrix v. Pactiv LLC, No. 6:19-cv-06419-MAT (W.D.N.Y. June 7, 2019) ("Hendrix I"). Although the complaint only named Pactiv, the complaint indicated that Masis Staffing Solutions LLC ("Masis") is also a defendant. See Complaint (ECF #1, Hendrix I) at 2. Second, on August 26, 2019, Hendrix commenced an action naming the following individuals and entities as defendants: Masis, Todd Comfort, Otto

Pina, Jany Gonzalez, Jaye Diaz, and Frank Battaglini. _Hendrix v. Masis Staffing Solutions LLC, et al._, 6:19-cv-06624-MAT (W.D.N.Y. Aug. 26, 2019) ("_Hendrix II_"). Within the _Hendrix II_ Complaint itself, and in the attached documents, Hendrix identifies a number of other individuals or entities who allegedly participated in the actions about which he complains: Pactiv, Alan Bellis, Shelly Cronk, Larissa Willis, Amanda Dressler, and John Cascini. _See_ Complaint (ECF #1, _Hendrix II_).

Presently before the Court are the Amended Complaint in _Hendrix I_ for screening, the Complaint in _Hendrix II_ for screening, and the Motion for _In Forma Pauperis_ ("IFP") Status in _Hendrix II_ ("Second IFP Motion"). For the reasons discussed below, the Second IFP Motion is granted, and _Hendrix I_ and _Hendrix II_ are consolidated pursuant to Rule 42 of the Federal Rules of Civil Procedure ("Rule 42").

## II. Consolidation Pursuant to Rule 42

Rule 42 provides that "[i]f actions before the court involve a common question of law or fact, the court may:

> (1) join for hearing or trial any or all matters at issue in the actions;
> (2) consolidate the actions; or
> (3) issue any other orders to avoid unnecessary cost or delay."

Fed. R. Civ. P. 42(a). "The trial court has broad discretion to determine whether consolidation is appropriate." _Johnson v. Celotex Corp._, 899 F.2d 1281, 1284–85 (2d Cir. 1990). Moreover, a "district

court can consolidate related cases under Federal Rule of Civil Procedure 42(a) _sua sponte_." _Devlin v. Transp. Commc'ns Int'l Union_, 175 F.3d 121, 130 (2d Cir. 1999).

In both _Hendrix I_ and _Hendrix II_, Plaintiff asserts various employment-related claims against his former employers, Pactiv and Masis, including discrimination, retaliation, and hostile work environment under a number of federal statutes, including Title VII of the Civil Rights Act of 1964, _as codified_, 42 U.S.C. §§ 2000e, _et seq._ ("Title VII"); the Americans with Disabilities Act of 1990, _as codified_, 42 U.S.C. § 12112, _et seq._ ("ADA"); and the Occupational Safety and Health Act ("OSHA"); and the New York Human Rights Law, as codified, N.Y. Exec. Law § 290, _et seq._ ("NYSHRL"). The actions involve common questions of fact and law and involve the same parties. Both actions are at the same stage of the proceedings since the defendants have not been served in either case. The Court finds that consolidation of _Hendrix I_ and _Hendrix II_ will serve Rule 42's primary purposes—promoting judicial economy and efficiency. Therefore, the Court _sua sponte_ consolidates these two actions.

## III. Legal Principles Applicable to Screening _Pro Se_ Complaints

Upon granting a request to proceed IFP, a district court additionally must screen the _pro se_ plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2) ("Section 1915(e)(2)"). Section 1915(e)(2) provides that a district court must dismiss a complaint

-3-

if it is "frivolous or malicious"; "fails to state a claim upon which relief may be granted"; or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

"An action is 'frivolous' for § 1915(e) purposes if it has no arguable basis in law or fact, as is the case if it is based on an 'indisputably meritless legal theory.'" Montero v. Travis, 171 F.3d 757, 759 (2d Cir. 1999) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)).

In order to state a claim upon which relief may be granted, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (internal quotation omitted). The complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2) ("Rule 8"). Although Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Iqbal, 556 U.S. at 678 (citation omitted). The court must accept as true all well-pleaded factual allegations in the complaint, but the same presumption does not apply to legal conclusions. Id. at 679. Thus, mere recitals of the legal elements of a cause of action, supported only by conclusory factual allegations, do not suffice. Id. at 678.

**IV. Summary of the Allegations in the Amended Complaint in <u>Hendrix I</u> and the Complaint in <u>Hendrix II</u>**

Hendrix describes himself as a "middle-aged" black/African-American male. In or around November or December 2017, he received a verbal offer of employment to work as an hourly employee for Pactiv, a manufacturing company, at their location in Canandaigua, New York. The employment offer came through Masis, a staffing company located in Rochester, New York.

On January 19, 2018, Hendrix worked the "A" shift from 11:30 p.m. to 8 a.m. At the beginning of his shift, his team leader, non-party Ms. Harding ("Harding"), told him that he was needed in the meat tray department because it was understaffed. At around 3:00 a.m., he heard a loud, rumbling sound, followed by a crashing sound. Apparently, a drag cart used for hauling freight around the facility had jumped the rails, crashed into the tape machine, and collided with the supply rack. The supply rack then was pushed into Plaintiff's lower right back.

Plaintiff alerted Pactiv official, defendant Shelly Cronk ("Cronk"), and she came over to investigate. However, Cronk never asked Plaintiff if he needed medical attention and directed him to go back to work in his usual department.

Plaintiff later told others about the incident (supervisors/team leaders Harding and defendant John Cascini ("Cascini"); his immediate supervisor, defendant Larissa Willis ("Willis"); and human resources representative defendant Amanda

Dressler ("Dressler")). They did not do anything to follow up, such as interviewing him about the incident or completing an incident report.

On January 20, 2018, Plaintiff went to Masis and told defendant Todd Comfort ("Comfort"), the general manager, what had happened. At Comfort's request, defendant Jany Gonzalez ("Gonzalez"), a Masis employee, took a report from him, but nothing else was done.

On May 9, 2018, Hendrix was working at Pactiv in the meat tray department on production line #32. As he was bagging up plates, the tape machine, which had very sharp blades, started to malfunction. Hendrix reported it to the Caucasian trainer (who is not identified). The trainer came over to fix it twice. When it malfunctioned a third time and Hendrix asked for help, the trainer looked at him, started laughing, and walked away in the opposite direction. Meanwhile, plates were coming off the machine and hitting the floor, causing to Hendrix to get nervous and his blood pressure and stress levels to rise. Hendrix "started getting massive headaches, like a pounding in the back of [his] head," his "vision became blurry," and he could not see more than three feet in front of him.

When a "Miss [N]aeslin," a Pactiv team leader, walked over and asked Hendrix what was wrong, he reported that the tape machine malfunctioned, that the trainer refused to help him, that he

(Hendrix) has a disability insofar as he is legally blind, and that his blood pressure was elevated and he had headache. Naeslin left and returned with Pactiv's operations manager, defendant Alan Bellis ("Bellis"), who "stared at [him] intently and yelled 'what's the problem[?]'" <u>Hendrix II</u> Complaint at 20. Hendrix responded that he has "disabilities and that the trainer (Caucasian trainer) refused to assist [him] in fixing the tape machine" which he was "not qualified to repair being that it has sharp blades" due to being "visually impaired[.]" <u>Id.</u> Bellis "got in [his] face and angrily responded, do you like working here?" <u>Id.</u> Hendrix replied, "[T]he meat tray area yes I do." <u>Id.</u> Bellis "yelled no 'Pactiv Incorporated'." <u>Id.</u> Hendrix said he likes working there and that he gets along with his team leaders and supervisors. <u>Id.</u> Bellis told him, "[L]ose the attitude and lose it quick." <u>Id.</u> Hendrix replied, "I just want to be able to do my job I have disabilities without being intimidated." <u>Id.</u> Bellis "angrily" repeated, "[L]ose the attitude" as he "stared intently" at Hendrix. <u>Id.</u>

Hendrix commented that he did not understand why Naeslin went to get Bellis since she did not offer him assistance; Naeslin said that Hendrix refused to tell her what was wrong and was being rude. <u>Hendrix II</u> Complaint at 21. Hendrix started to explain that he was not trying to be rude, but Bellis cut him off, telling him that Naeslin was the team leader and Hendrix was to do what she said.

Id. Hendrix was "terrified" of Bellis and so he remained silent. Id.

Hendrix reported the May 9, 2018 incident with Bellis to Willis, his supervisor, and Cascini, his team leader. Hendrix II Complaint at 21. He also reported it to Comfort, Masis's general manager, and defendant Otto Pina ("Pina"), a team coordinator at Masis. However, nothing was done to address his complaints of harassment and discrimination based on his disabilities.

Hendrix asserts that he and "other black employees" also would complain about racism at Pactiv to Comfort. For instance, Hendrix and other black employees were "being yelled at and screamed at and insulted" by Pactiv employees. Comfort's "attitude was you are basically working in a predominantly Caucasian/country side area so just deal with it." Hendrix asserts that Comfort's failure to make any attempt to adress it with Pactiv was "a violation of the Masis Staffing Solutions and Pactiv LLC joint anti harassment discrimination policy." Hendrix II Complaint at 24.

On Saturday, July 7, 2018, Hendrix's wife was hospitalized. He had signed up to work four hours of overtime but, because of his wife's illness, Hendrix called and left a voicemail saying he would not be in to work that day.

At about 9:30 a.m. on Monday, July 9, 2018, defendant Jaye Diaz ("Diaz"), the work site coordinator at Masis, called to tell him that Pactiv had fired him. Hendrix II Complaint at 21. Hendrix

told her that he had complained about being discriminated against at Pactiv, that he had been injured on the job and his concerns ignored, that he had complained about being threatened and intimidated by Pactiv officials, and neither Pactiv nor Masis did anything about it. He said it was not fair that he was being fired. Diaz replied, "[I]t is their company and they are the one who fired you. What type of experience do you have so I can start looking for more work for you." Id. Hendrix responded that he had more than 20 years of manufacturing experience and that he needed to work. Diaz promised to put him on the list first when jobs came in. However, he did not hear from Masis again even though he made dozens of phone calls and left 20 voicemail messages.

## V. Screening of the Amended Complaint in <u>Hendrix I</u> and the Complaint in <u>Hendrix II</u>

### A. OSHA Claim

Plaintiff asserts a cause of action under OSHA due to Cronk's alleged falsification of OSHA paperwork on January 19, 2018.

OSHA provides in relevant part as follows:

> Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

29 U.S.C. § 653(b)(4). "Pursuant to this provision, it is now well established that 'OSHA violations do not themselves constitute a private cause of action for breach.'" <u>Am. Fed'n of Gov't Employees,</u>

AFL-CIO v. Rumsfeld, 321 F.3d 139, 143–44 (D.C. Cir. 2003) (quoting Crane v. Conoco, Inc., 41 F.3d 547, 553 (9th Cir. 1994); citing Pedraza v. Shell Oil Co., 942 F.2d 48, 52 (1st Cir. 1991) ("[E]very court faced with the issue has held that OSHA creates no private right of action."); other citations omitted).

The Court concludes that Hendrix's OSHA claim fails to state a cause of action upon which relief may be granted. Leave to replead would be futile, since OSHA creates no private cause of action. In other words, the defect in this claim is substantive, and better pleading would not cure it. Therefore, the OSHA claim is dismissed with prejudice. See Perez v. Ormiston, 364 F. App'x 93, 94 (5th Cir. 2010) (summary order) ("Not only has Perez previously unequivocally denied that Ormiston is a state actor, Perez has alleged no constitutional violation, and we have held that OSHA does not give rise to a private cause of action".) (citation omitted).

## B.   Family Medical Leave Act

The Family Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA") prohibits an employer from interfering with, restraining, or denying an employee the exercise of any right to leave under the statute. See 29 U.S.C. § 2615; see also 29 U.S.C. §§ 2611–2619. Plaintiff asserts that Pactiv's human resources department refused to grant him paid family leave on May 1, 2018, so that he could take care of his ill wife.

Only eligible employees are entitled to leave under the Act. 29 U.S.C. § 2612. "'Eligible employee' is defined under 29 U.S.C. § 2611(2)(A) as an employee who has been employed for at least 12 months by the employer and has completed at least 1,250 hours of service with such employer during the previous 12-month period." Cantrell v. Delta Airlines, Inc., 2 F. Supp.2d 1460, 1462 (N.D. Ga. 1998) (citing 29 C.F.R. § 825.110(a)). Here, Plaintiff's own pleadings indicate that he was not employed by Pactiv for 12 months; he was hired in November 2017, and the alleged violation of the FMLA occurred in May 2, 2018. Therefore, he cannot state a cause of action under the FMLA. This claim is dismissed with prejudice without leave to replead.

### C.   Common Law Negligence

In support of his negligence cause of action, Hendrix relies on the same facts he cites in support of his OSHA claim.

The exclusive remedy doctrine set forth in the New York Workers' Compensation Law ("WCL") bars an employee from bringing a negligence or gross negligence based claim against an employer and the employer's agents. See N.Y. Work. Comp. Law § 11 ("The liability of an employer prescribed by the last preceding section shall be exclusive and in place of any other liability whatsoever, to such employee, his or her personal representatives, spouse, parents, dependents, distributees, or any person otherwise entitled to recover damages, contribution or indemnity, at common law or

otherwise, on account of such injury or death or liability arising therefrom. . . .").

Hendrix's negligence claim is based on allegations that various Pactiv employees breached a duty of care by failing to ask him if he was injured and to complete an incident report. The claim thus sounds in common law negligence. However, New York's WCL § 11 "provides an exclusive remedy for negligence actions by an employee against his/her employer." Duran v. Jam. Hosp., 216 F. Supp.2d 63, 66 (E.D.N.Y. 2002). "[C]ourts have consistently interpreted this provision to bar negligence claims brought in federal court by an employee against an employer." Id. (citing Walker v. Weight Watchers Intern., 961 F. Supp. 32, 35 (E.D.N.Y. 1997); Chrzanowski v. Lichtman, 884 F. Supp. 751, 756 (W.D.N.Y. 1995)). Therefore, Hendrix's negligence claim is dismissed with prejudice without leave to replead, because he is barred as a matter of law from bringing such a claim in this Court. Accord, e.g., Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P., No. 14-CV-2065 (AJN), 2015 WL 13654007, at *19 (S.D.N.Y. Mar. 26, 2015).

### D. Products Liability Claim

Hendrix states that he is asserting a products liability claim based on the drag cart used in the meat tray department at Pactiv. As noted above, Hendrix alleges that the drag cart "jumped the rails" and crashed into a supply cart which in turn struck him in the back.

"A cause of action in strict products liability lies where a manufacturer places on the market a product which has a defect that causes injury." Robinson v. Reed-Prentice Div. of Package Mach. Co., 49 N.Y.2d 471, 478 (1980) (citation omitted). "New York law recognizes that a defect may exist in three ways—improper design, mistake in manufacturing, or by the inadequacy or absence of warning regarding the use of the product." Cavanagh v. Ford Motor Co., No. 13-CV-4584 JS WDW, 2014 WL 2048571, at *2 (E.D.N.Y. May 19, 2014) (citing Robinson, 49 N.Y.2d at 478 (internal citations omitted in original)).

To state a claim for manufacturing defect, a plaintiff must plead "[1] that a specific product unit was defective as a result of 'some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction,' and [2] that the defect was the cause of plaintiff's injury." Caprara v. Chrysler Corp., 52 N.Y.2d 114, 129 (1981). To state a claim for design defect, a plaintiff must allege "facts identifying how the device is defectively designed or the existence of a feasible alternative design." Bertini v. Smith & Nephew, Inc., No. 13-CV-0079, 2013 WL 6332684, at *3 (E.D.N.Y. July 15, 2013) (citing Reed v. Pfizer, Inc., 839 F. Supp.2d 571, 577-78 (E.D.N.Y. 2002)). To assert a failure to warn claim, a plaintiff must allege "(1) that a manufacturer has a duty to warn; (2) against dangers resulting from foreseeable uses about which it knew or should have

known; and (3) that failure to do so was the proximate cause of harm." Colon ex. Rel. Molina v. BIC USA, Inc., 199 F. Supp.2d 53, 84 (S.D.N.Y. 2001) (citations omitted).

Plaintiff has not pleaded any facts supporting a manufacturing defect, design defect, or failure to warn claim. Instead, Plaintiff simply infers that because the drag cart allegedly "jumped the rails," there must have been something wrong with it. This is plainly insufficient under Iqbal. Accordingly, Hendrix's claims sounding in products liability are dismissed. Reed, 839 F. Supp.2d at 577 (dismissing products liability claim based on allegedly dangerous prescription drug where plaintiffs did not "plead facts identifying [drug]'s design defect," but "merely plead[ed] the legal conclusion[s] that the [drug] was defective," the defendants were "'negligent' in 'formulating' 'fabricating,' 'manufacturing,' and 'packaging,' [the drug]" and "did so 'in violation of applicable statutes, regulations, and appropriate standards of care'"); Am. Guarnatee & Liab. Ins. Co. v. Cirrus Design Corp., No. 09 CV 8357 BSJ HBP, 2010 WL 5480775, at *3 (S.D.N.Y. Dec. 30, 2010) (dismissing claim where the plaintiffs "not only failed to specify the defective component but have also failed to adequately allege any deviations from the manufacturing process, improper workmanship, or defective materials").

Where "the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive

dismissal, opportunity to replead is rightfully denied." <u>Hayden v.</u>
<u>Cty. of Nassau</u>, 180 F.3d 42, 53 (2d Cir. 1999); <u>accord</u>, <u>e.g.</u>,
<u>Waronker v. Hempstead Union Free Sch. Dist.</u>, No. 19-407, 2019 WL
5250703, at *5 (2d Cir. Oct. 17, 2019) (summary order). Such is the
case here. Hendrix's products liability claims are dismissed with
prejudice without leave to replead.

### E. ADA

The ADA prohibits discrimination against a "qualified
individual with a disability because of the disability" in the
"terms, conditions, and privileges of employment." 42 U.S.C.
§ 12112(a). "A plaintiff asserting a violation of the ADA must
prove that: (1) the defendant is covered by the ADA; (2) plaintiff
suffers from or is regarded as suffering from a disability within
the meaning of the ADA; (3) plaintiff was qualified to perform the
essential functions of the job, with or without reasonable
accommodation; and (4) plaintiff suffered an adverse employment
action because of his disability or perceived disability."
<u>Capobianco v. City of N.Y.</u>, 422 F.3d 47, 56 (2d Cir. 2005)
(citations omitted).

### 1. Reasonable Accommodation

The elements of a <u>prima</u> <u>facie</u> claim based an employer's
failure to reasonably accommodate a disability are as follows:
(1) the employee is a person with a disability under the meaning of
the ADA; (2) an employer covered by the statute had notice of his

or her disability; (3) with reasonable accommodation, the employee could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations. Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006) (quotation marks omitted).

The Court assumes for the sake of screening that Hendrix has plausibly alleged the first two elements of an ADA claim—that Pactiv has a sufficient number of employees (more than 15) to be covered by the ADA; and that Hendrix was suffering from a disability within the ADA based on his allegation that he is visually impaired to the degree he cannot drive a car and has high blood pressure.

With regard to the third element—a reasonable accommodation request—the Court has construed Hendrix's allegations broadly to assert that he requested assistance with repairing the tape machine when it malfunctioned on May 9, 2018, because he was unable to do it himself due to his vision impairment.

As to the fourth element, Hendrix has alleged that after assisting him initially, an unnamed Pactiv employee then refused to help him and laughed at him. Then, when Hendrix informed defendant Bellis what had happened, Bellis did not acknowledge his concerns but instead yelled at him and told him to "lose the attitude." For purposes of initial screening, the Court will allow the reasonable accommodation claim to proceed.

## 2.    Discrimination

A requisite element of an ADA discrimination claim is that the employee has suffered an "adverse employment action" which occurs when "he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (quoting Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 446 (2d Cir. 1999)). Construing Hendrix's allegations liberally, the assignment of a task outside of the scope of his abilities and job duties, i.e., fixing a malfunctioning tape machine that had sharp blades, could be an adverse change in his employment conditions. See, e.g., Vale v. Great Neck Water Pollution Control Dist., 80 F. Supp.3d 426, 434 (E.D.N.Y. 2015) (ADA plaintiff with a wrist injury adequately alleged adverse employment action where, inter alia, she suffered an "adverse employment action" in the form of the modification of her job duties, namely, the shift to certain labor-intensive tasks). The Court will allow the ADA discrimination claim to proceed.

## 3.    Hostile Work Environment

For years, "district courts have found that the ADA encompasses hostile work environment claims[,]" Monterroso v. Sullivan & Cromwell, LLP, 591 F. Supp.2d 567, 584 (S.D.N.Y. 2008), and the Second Circuit had "assumed without deciding that [such] claims are cognizable under the ADA." Fox v. Costco Wholesale

Corp., 918 F.3d 65, 73-74 (2d Cir. 2019). In Fox, the Second Circuit sided with its sister circuits and specifically held that a plaintiff can pursue a hostile work environment claim under the ADA. See Fox, 918 F.3d at 74 ("Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—it follows that disabled Americans should be able to assert hostile work environment claims under the ADA, as can those protected by Title VII under that statute . . . .") (internal quotation marks, quotation and citation omitted).

"To prevail on a hostile work environment claim, [the plaintiff] must show '(1) that the harassment was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment," and (2) that a specific basis exists for imputing the objectionable conduct to the employer.'" Id. (quoting Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002); further quotation omitted; alteration in original).

Plaintiff alleges that he was harassed, berated, and implicitly threatened with termination by a Pactiv employee, Bellis, based on his disability. For purposes of initial screening only, the Court will allow the ADA hostile work environment claim to proceed against Pactiv. In order to prevail on this claim, Plaintiff eventually have to come forward with "proof of 'the frequency of the discriminatory conduct; its severity; whether it

[was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance.'" <u>Fox</u>, 918 F.3d at 74 (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23 (1993); alterations in original).

### 4. Individual Liability Under the ADA

"Although the Second Circuit has held that there is no individual liability under the ADA's retaliation provision, . . . it has not reached the question with respect to the ADA's other provisions." <u>Szewczyk v. City of N.Y.</u>, No. 17-CV-01884 (MKB), 2018 WL 4688946, at *6 n.6 (E.D.N.Y. Sept. 28, 2018) (citing <u>Spiegel v. Schulmann</u>, 604 F.3d 72, 79 (2d Cir. 2010) (<u>per</u> <u>curiam</u>)). However, the majority of district courts in this Circuit have determined that the ADA's other provisions also do not provide for individual liability. <u>Id.</u> (citing <u>Lane v. Maryhaven Ctr. of Hope</u>, 944 F. Supp. 158, 162 (E.D.N.Y. 1996) (finding that "there is no cause of action against a supervisor, individually, for discriminatory employment practices in violation of the ADA" because "it would be incongruous for Congress to limit liability to employers with more than fifteen employees but impose liability upon individual employees, even when considering the plain meaning of the definition of the term employer under the statute"); other citations omitted). Therefore, the Court will allow the reasonable accommodation and

discrimination claims under the ADA to proceed against Pactiv but not against any Pactiv employees.

**F.    Hostile Work Environment and Retaliation Under 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981**

Hendrix cites 42 U.S.C. § 1981 ("Section 1981") and 42 U.S.C. § 2000e, Title VII of the Civil Rights Act of 1964 ("Title VII") in his Complaints. Broadly construing the Complaints, Hendrix alleges that Pactiv discriminated against him because of his race and retaliated against him because he complained about race-based discrimination and harassment in the workplace. He asserts that Masis discriminated against him because of his race; and, because filed a discrimination and harassment complaint against its client, Pactiv, retaliated against him by refusing to find him any new employment positions after he was terminated by Pactiv.

**1.    Title VII**

Title VII prohibits discrimination based on race, color, religion, sex, or national origin "with respect to . . . compensation, terms, conditions, or privileges of employment," and discriminatory practices that would "deprive any individual of employment opportunities or otherwise adversely affect his status as an employee." Burlington N. & S.F.R. Co. v. White, 548 U.S. 53, 62 (2006). Under Title VII, "the term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b). Title VII allows liability to attach only to the

employer-entity, and thus "individuals are not subject to personal liability under Title VII." <u>Wrighten v. Glowski</u>, 232 F.3d 119 (2d Cir. 2000); <u>see also</u> <u>Copeland v. Rosen</u>, 38 F. Supp.2d 298, 302 (S.D.N.Y. 1999) ("[I]ndividuals employees may not be held personally liable under Title VII, even if they are supervisory personnel with the power to hire and fire other employees.") (citing <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1314-15 (2d Cir. 1995)). Thus, Plaintiff's Title VII claims may only be asserted against Masis and Pactiv. <u>E.g.</u>, <u>De La Pena v. Metro. Life Ins. Co.</u>, 953 F. Supp.2d 393, 408-09 (E.D.N.Y. 2013), <u>aff'd</u>, 552 F. App'x 98 (2d Cir. 2014).

### a. Retaliation

"To establish a <u>prima</u> <u>facie</u> case of retaliation, an employee must show '(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.'" <u>Terry v. Ashcroft</u>, 336 F.3d 128, 141 (2d Cir. 2003) (internal citations omitted). The Second Circuit has recognized that "protected activity" includes "informal protests of discriminatory employment practices, including making complaints to management." <u>Sumner v. U.S. Postal Serv.</u>, 899 F.2d 203, 209 (2d Cir. 1990).

An adverse employment action is "any action that 'could well dissuade a reasonable worker from making or supporting a charge of

discrimination.'" <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 90 (2d Cir. 2015) (quoting <u>Burlington N. & Santa Fe Ry. Co.</u>, 548 U.S. at 57). "While there is no exhaustive list of what constitutes an adverse employment action, courts have held that the following actions, among others, may qualify: discharge or demotion; denial of a provisional or permanent promotion; addition of responsibilities; involuntary transfer that entails objectively inferior working conditions; denial of benefits; denial of a requested employment accommodation; denial of training that may lead to promotional opportunities; and a shift assignment that makes a normal life difficult for the employee[.]" <u>Little v. Nat'l Broad. Co.</u>, 210 F. Supp.2d 330, 377 (S.D.N.Y. 2002) (internal citations omitted).

"A plaintiff can demonstrate a causal connection (a) indirectly by showing that the protected activity was followed closely by discriminatory treatment; (b) indirectly through other evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (c) directly through evidence of retaliatory animus." <u>Carr v. Westlb Admin., Inc.</u>, 171 F. Supp.2d 302, 309 (S.D.N.Y. 2001) (citing <u>DeCintio v. Westchester Cty. Med. Ctr.</u>, 821 F.2d 111, 115 (2d Cir. 1987)).

The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a

federal constitutional right and an allegedly retaliatory action." Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001) (comparing Richardson v. New York State Dep't of Corr. Servs., 180 F.3d 426, 446–47 (2d Cir. 1999) (abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998) (discharge less than two months after plaintiff filed a sexual harassment complaint with management and ten days after filing complaint with state human rights office provided prima facie evidence of a causal connection between protected activity and retaliation); Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45–46 (2d Cir. 1980) (eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship), with Hollander v. American Cyanamid Co., 895 F.2d 80, 85–86 (2d Cir. 1990) (passage of three months too long to suggest a causal relationship between complaint and failure to provide good recommendation)).

From what the Court can discern from the allegations, Hendrix complained about racial discrimination and harassment at Pactiv to Pactiv officials on or about May 9, 2018, and was terminated by Pactiv on July 9, 2018. Around the time he complained to Pactiv, Hendrix also complained to Masis about the discriminatory and harassing treatment he was experiencing at Pactiv. Almost

immediately after his termination from Pactiv, Hendrix requested that Masis start looking for other employment positions for him, and Masis promised to do so. However, Masis never sent him on any potential jobs and never returned his many phone calls and messages inquiring about its progress on finding him new work. For purposes of initial screening, the Court finds that Hendrix has plausibly alleged claims of retaliatory discharge against Pactiv and Masis under Title VII.

### b.  Hostile Work Environment

"To state a hostile work environment claim in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive, that is, . . . the conduct creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of [any characteristic protected by Title VII],'" Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (per curiam) (quoting Gregory v. Daly, 243 F.3d 687, 691–92 (2d Cir. 2001)). The type of "racially discriminatory conduct" that may create a hostile work environment includes such things as '"discriminatory intimidation, ridicule, and insult,"' Williams v. Cty. of Westchester, 171 F.3d 98, 100 (2d Cir. 1999) (per curiam) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (further quotation omitted).

Hendrix asserts that he and "other black employees" informed Comfort, Masis's general manager, that Pactiv employees "yelled at and screamed at and insulted" them based on their race. However, Comfort justified it based on the fact that Pactiv was located in what he characterized as a "predominantly Caucasian/country side area." Hendrix alleges that Comfort never made any attempt to resolve his concerns with Pactiv management, which amounted to a violation of the Masis/Pactiv joint anti-harassment and anti-discrimination policy.

The Court notes that "[o]rdinarily, a race-based hostile work environment claim must involve 'more than a few isolated incidents of racial enmity.'" La Grande v. DeCrescente Distrib. Co., 370 F. App'x 206, 210 (2d Cir. 2010) (unpublished opn.) (quoting Williams, 171 F.3d at 100-01). "Courts will look at 'the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance[.]'" Alvarado v. Mount Pleasant Cottage Sch. Dist., No. 18-CV-00494 (NSR), ___ F. Supp.3d ___, 2019 WL 4039149, at *9 (S.D.N.Y. Aug. 27, 2019) (quoting Yan v. Ziba Mode Inc., No. 15-cv-47 (RJS), 2016 WL 1276456, at *5 (S.D.N.Y. Mar. 29, 2016) (internal quotations omitted in original)). For purposes of initial screening only, the Court will allow the Title VII hostile work

environment claim to proceed against Pactiv and Masis. In order to succeed on this claim, however, Hendrix eventually will have to establish the frequency, nature, or substance of the allegedly offensive comments; as well as that they were "sufficiently continuous and concerted to have altered the conditions of [his] working environment." Yan, 2016 WL 1276456 at *5 (internal quotations omitted).

### 2. Section 1981

Hendrix alleges retaliation under Section 1981 based on the same facts on which he relies for his Title VII claim. Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). It therefore "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." Patterson v. Cty. of Oneida, 375 F.3d 206, 224 (2d Cir. 2004). "[A]n at-will employment agreement governed by New York law constitutes a 'contract' within the meaning of 42 U.S.C. § 1981." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 68 (2d Cir. 2000) (citation omitted).

### a.   Retaliation and Hostile Work Environment Under Section 1981

"The elements required to make out a claim of retaliatory discharge under 42 U.S.C. § 1981 are the same as those required to make out such a claim under Title VII." Taitt v. Chem. Bank, 849 F.2d 775, 777 (2d Cir. 1988). And, as is the case under Title VII, a Section 1981 "hostile working environment is shown when the incidents of harassment occur either in concert or with a regularity that can reasonably be termed pervasive." Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1189 (2d Cir. 1987).

For the same reasons as stated in its discussion regarding the Title VII claims, the Court will allow the Section 1981 retaliation and hostile work environment claims to proceed to service against Pactiv and Masis.

### b.   Individual Liability Under Section 1981

In order to make out a claim for individual liability under § 1981, "a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action. . . . [P]ersonal liability under section 1981 must be predicated on the actor's personal involvement." Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 229 (2d Cir. 2004). For purposes of initial screening, Plaintiff's Complaints set forth sufficient allegations of personal involvement by Comfort, Masis's general manager, and Diaz, Masis's work site coordinator, in the Section 1981 claims alleging retaliation to allow them to proceed to service. In

addition, the Court finds that the Complaints set forth sufficient allegations of personal involvement by Comfort in the Section 1981 claims alleging hostile work environment.

### G.   NYHRL

Hendrix asserts parallel claims of race-based and disability-based discrimination under the NYHRL, which, among other things, makes it unlawful

> (a) [f]or an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, gender identity or expression, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment[;]

> (b) [f]or an employment agency to discriminate against any individual because of age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, or marital status, in receiving, classifying, disposing or otherwise acting upon applications for its services or in referring an applicant or applicants to an employer or employers[;]

> . . .

N.Y. Exec. Law § 296(1). Individual liability for discrimination under NYHRL § 296(1) is "limited to individuals with ownership interest or 'supervisors, who themselves, have the authority to "hire and fire employees."'" Banks v. Corr. Servs. Corp., 475 F. Supp.2d 189, 199 (E.D.N.Y. 2007) (quoting Gentile v. Town of

Huntington, 288 F. Supp.2d 316, 321 (E.D.N.Y. 2003) (quoting Tomka, 66 F.3d at 1317).

> In addition, the NYHRL provides that
>
> 6. It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.
>
> 7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

N.Y. Exec. Law § 296(6), (7). In contrast to NYHRL § 296(1), NYHRL § 296(6), the "aider and abettor" section, "imposes individual liability on 'a defendant who actually participates in the conduct giving rise to a discrimination claim,' irrespective of whether the individual possesses power to do more than carry out personnel decisions made by others." Banks, 475 F. Supp.2d at 200 (quoting Tomka, 66 F.3d at 1317; footnote omitted). With regard to retaliation claims specifically, NYHRL § 296(7) subjects "any person," not only employers, to potential liability.

Disability discrimination under the NYHRL "is governed by the same legal standards as govern federal ADA claims." Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 n.3 (2d Cir. 2006). Racial discrimination under the NYHRL is governed by the same standards that apply to Title VII and Section 1981 claims. See Ruiz v. Cnty.

-29-

of Rockland, 609 F.3d 486, 491 (2d Cir. 2010) (analyzing Title VII and Section 1981 claim for racial discrimination under three-step McDonnell Douglas burden-shifting framework); Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010) (holding that three-step McDonnell Douglas burden-shifting framework applies to racial discrimination claims brought under the NYHRL). For the same reasons set forth in the Court's discussion of the ADA, Title VII and Section 1981 claims, the Court will allow the NYHRL § 296(1) claims to proceed to service against Pactiv, which Plaintiff has sufficiently alleged is an employer, id. § 296(1)(a), and Masis, which he sufficiently has alleged is an employment agency, id. § 296(1)(b).

Because NYHRL § 296 permits individuals to be held liable as aiders or abettors, see N.Y. Exec. Law § 296(6), the Court must determine whether the NYHRL claims may proceed to service against any of the individuals identified in the Complaints. It is unclear at this stage whether any of the individuals named in the Amended Complaint in Hendrix I and the Complaint in Hendrix II qualify as "employers." Given that NYHRL § 296(6) allows for aider-and-abettor liability for discrimination claims, and NYHRL § 296(7) allows for "any person" rather than just "employers" to be liable for retaliation, the Court will allow the NYHRL race-based retaliation claims under § 296(7) to proceed to service against Masis employees Comfort and Diaz, and the NYHRL disability-based

and race-based aider and abettor liability claims under § 296(6) to proceed to service against Pactiv employees Bellis and Willis and Masis employee Pina.

Finally, the Court cautions Plaintiff that the NYHRL claims may be barred by the election of remedies doctrine. See Moodie v. Fed. Reserve Bank of N.Y., 58 F.3d 879, 882-83 (2d Cir. 1995) ("Generally, the remedies of administrative review through the Human Rights Division or judicial review are mutually exclusive. . . . '[O]nce a complainant elects the administrative forum by filing a complaint with the Division of Human Rights, a subsequent judicial action on the same complaint is generally barred.'") (quotation omitted; emphases in original). There are two exceptions to the election of remedies doctrine. The first applies where the complaint is dismissed for administrative convenience rather than on the merits; the second applies when a claim is filed directly with the EEOC rather than the NYSDHR. Williams v. City of N.Y., 916 F. Supp.2d 517, 522-23 (S.D.N.Y. 2013) (citations omitted). The election of remedies bar is jurisdictional. Moodie, 58 F.3d at 882. At this point in the proceeding, the pleadings are inadequate for the Court to make a determination about the applicability of the election of remedies doctrine.

## VI. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that the Second IFP Motion is granted; and it is further

**ORDERED** that Hendrix I, 6:19-cv-06419-MAT, and Hendrix II, 6:19-cv-06624-MAT, are consolidated pursuant to Rule 42. It is further

**ORDERED** that Hendrix II, 6:19-cv-06624-MAT shall be closed and all future docketing in the consolidated actions shall be done in Hendrix I, 6:19-cv-06419-MAT. It is further

**ORDERED** that the caption in Hendrix I, 6:19-cv-06419-MAT shall be amended to name the following individuals and entities as defendants: Pactiv LLC; Masis Staffing Solutions, LLC; Alan Bellis; Larissa Willis; Todd Comfort; Jaye Diaz; and Otto Pina. It is further

**ORDERED** that Frank Battaglini and Jany Gonzalez, who are named as defendants Hendrix II, 6:19-cv-06624-MAT, are terminated as parties to the consolidated actions based on Plaintiff's failure to allege any involvement by these individuals in any of the claims that the Court is allowing to proceed. It is further

**ORDERED** that all other individuals who are mentioned in the Complaint in Hendrix II, 6:19-cv-06624-MAT, and the Amended Complaint in Hendrix I, 6:19-cv-06419-MAT, but who were not identified by Plaintiff specifically as parties (namely, Ms. Harding, Miss Naeslin, Shelly Cronk, Amanda Dressler, and John Cascini), are terminated as defendants because Plaintiff did not

allege involvement by them in any of the claims that the Court is allowing to proceed. It is further

ORDERED that the following claims are **<u>dismissed with prejudice without leave to plead</u>**:

- OSHA claims;
- FMLA claims;
- common law negligence claims; and
- products liability claims (all theories of liability).

It is further

ORDERED that the following claims may proceed to service as described more particularly above in this Decision and Order:

- ADA claims;
- Title VII claims;
- Section 1981 claims; and
- NYHRL claims.

In so ordering, the Court expresses no opinion as to whether the these claims can withstand a properly filed dispositive motion. It is further

ORDERED that the Clerk of Court is directed to issue Summonses naming the following entities and individuals:

- Pactiv LLC;
- Masis Staffing Solutions, LLC;
- Pactiv employee, Alan Bellis;
- Pactiv employee, Larissa Willis;
- Masis employee Todd Comfort;
- Masis employee Jaye Diaz; and
- Masis employee Otto Pina.

It is further

**ORDERED** that the United States Marshals Service shall serve copies of the Summonses; copies of the Consolidated Amended Complaint,[1] which is attached as Exhibit 1 to this Decision and Order; and copies of this Decision and Order upon

- Pactiv LLC;
- Masis Staffing Solutions, LLC;
- Pactiv employee, Alan Bellis;
- Pactiv employee, Larissa Willis;
- Masis employee Todd Comfort;
- Masis employee Jaye Diaz; and
- Masis employee Otto Pina,

without Plaintiff's payment therefor, any unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor. It is further

**ORDERED** that the Clerk of Court shall file the Consolidated Amended Complaint (i.e., Exhibit 1 to this Decision and Order), in Hendrix I, 6:19-cv-06419-MAT, and that the Consolidated Amended Complaint shall become the operative pleading in the consolidated actions. It is further

**ORDERED** that upon the defendants' receipt of the Consolidated Amended Complaint, a response to that pleading shall be filed by the defendants or their attorneys in accordance with the Federal Rules of Civil Procedure. It is further

---

[1] The Consolidated Amended Complaint consists of the original Complaint in Hendrix II, 6:19-cv-06624-MAT, and the Amended Complaint in Hendrix I, 6:19-cv-06419-MAT, which the Court has combined into a single document.

**ORDERED** that in the event Hendrix wishes to further amend his pleadings to add additional claims or defendants, he must either (1) obtain consent from the defendants before doing so, or (2) submit a proper motion for leave to file an amended complaint in accordance with the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure for the Western District of New York. However, Plaintiff is advised that under no circumstances, will leave to amend or replead be granted with regard to the claims dismissed with prejudice (namely, the OSHA claims, the FMLA claims, the common law negligence claims; and that products liability claims (all theories of liability)).

**SO ORDERED.**

S/Michael A. Telesca

_____
    HON. MICHAEL A. TELESCA
    United States District Judge

Dated:     February 5, 2020
           Rochester, New York.