UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WALTER J. HENDRIX,

                                                         DECISION AND ORDER

                           Plaintiff,

                                                         19-CV-6419L

          v.

PACTIV LLC, et al.,

                           Defendants.
_____


       Plaintiff Walter J. Hendrix, appearing *pro se*, instituted two actions in this Court: *Hendrix v. Pactiv LLC*, No. 6:19-cv-6419), and *Hendrix v. Masis Staffing Solutions LLC, et al.*, 6:19-cv-6624. Though the two actions named different defendants, both asserted various employment-related claims against his former employers, Pactiv LLC ("Pactiv") and Masis Staffing Solutions LLC ("Masis").

       On February 5, 2020, District Judge Michael A. Telesca issued a Decision and Order in both cases ("Screening Decision"), following the Court's initial screening of the complaints pursuant to 28 U.S.C. § 1915(e)(2). In that decision, Judge Telesca ordered that the two actions be consolidated, dismissed some of plaintiff's claims (either in their entirety or against certain defendants), and permitted four claims to go forward against seven defendants. Specifically, the Court allowed plaintiff to proceed on his claims under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112, *et seq.* ("ADA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981, and the New York Human Rights Law, N.Y. Exec. Law § 290, *et seq.* ("HRL"). 2020 WL 562748, at *12-*13. The defendants who remained

in the case were Pactiv, Masis, and five individuals: Alan Bellis, Larissa Willis, Todd Comfort, Jaye Diaz, and Otto Pina. Pursuant to Judge Telesca's order, plaintiff's consolidated amended complaint ("CAC") was filed on February 6, 2020. (Dkt. #8.)[1]

Pactiv, Bellis and Willis have now moved (Dkt. #25) to dismiss the complaint against them pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The other four defendants, who are represented by separate counsel, have not moved at this time. Plaintiff has filed papers in opposition to the motion to dismiss.

## BACKGROUND

For the purposes of the present Decision and Order, familiarity with Judge Telesca's February 5 Decision and Order is assumed. That decision sets forth the underlying facts, which will not be repeated here at length.

Plaintiff alleges that in late 2017, he began working for Pactiv, a manufacturing company. He apparently obtained the job through Masis, an employment agency.

During his time at Pactiv, plaintiff experienced several problems. These include an incident on January 19, 2018, in which plaintiff was allegedly injured in a workplace accident, and an incident on May 9, 2018 in which the machine on plaintiff's production line repeatedly malfunctioned. Plaintiff alleges that in both incidents, his supervisors refused to help him and behaved hostilely toward him.

---

[1] The case was transferred to me following Judge Telesca's death in March of this year. (Dkt. #14.)

On Saturday, July 7, 2018, plaintiff's wife was hospitalized.  Plaintiff, who had signed up to work overtime that day, called in and left a voice message saying that he would not be in to work that day. On the morning of Monday, July 9, 2018, defendant Diaz, the work site coordinator for Masis, called plaintiff and told him that Pactiv had fired him.

As stated, the present motion is brought by Pactiv, Bellis and Willis.  At all relevant times, Bellis was Pactiv's operations manager.  Willis was plaintiff's immediate supervisor at Pactiv.

## DISCUSSION

**I. Standards on a Motion to Dismiss under Rule 12(b)**

The moving defendants (hereinafter referred to simply as "defendants") have moved to dismiss under Rules 12(b)(1) and 12(b)(6).  A Rule 12(b)(1) motion is addressed to the court's subject matter jurisdiction over the case.  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  In deciding a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  *Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks and citation omitted), *aff'd*, 561 U.S. 247 (2010).  "The

plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint and requires a court to determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has stated a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). When deciding a Rule 12(b)(6) motion, a court must accept the truth of the factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. *See*, *e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive such a motion, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Those standards apply regardless of whether the plaintiff is represented by counsel, or appearing *pro se*. Although a *pro se* litigant's papers are held to "less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), giving due regard to the plaintiff's lack of legal training, a plaintiff's *pro se* status does not render his pleadings immune from scrutiny. Even allowing for some liberality in the construction of the litigant's papers, "a *pro se* complaint must state a plausible claim for relief." *Meadows v. United Services, Inc.*, 963 F.3d 240, 243 (2020) (quoting *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013)). "In other words, the 'duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it.'" *Stone v. 23rd Chelsea Associates*, 18-CV-3869, 2020 WL 1503671, at *4

(S.D.N.Y. Mar. 30, 2020) (quoting *Geldzahler v. N.Y. Med. Coll.*, 663 F.Supp.2d 379, 387 (S.D.N.Y. 2009)).

In addition, a court's decision allowing some claims to go forward at the initial screening stage does not insulate those claims from later review on a motion to dismiss. The court retains an inherent power to dismiss an action if it becomes apparent that the court lacks subject matter jurisdiction or that the action is meritless on its face. An initial screening decision permitting some claims to proceed does not amount to a judicial imprimatur endorsing the validity of those claims. *See Sawyer v. NYSDOCS*, No. 11-CV-152, 2015 WL 6641471, at *4 (W.D.N.Y. Oct. 28, 2015) ("dismissal of this claim is not barred by [its] earlier decisions" on initial screening); *Wilson v. Medical Unit Officials*, No 10-CV-1438, 2011 WL 6780934, at n.2 (E.D.N.Y. Dec. 27, 2011) ("an initial screening does not preclude a later dismissal of the complaint, in whole or part, under Federal Rule of Civil Procedure 12(b)(6)"). *See also Cusamano v. Sobek*, 604 F.Supp.2d 416, 435 n. 29 (N.D.N.Y. 2009), and cases cited therein.

**II. ADA Claim**

The ADA prohibits discrimination against a "qualified individual with a disability because of the disability" in the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff asserting an ADA claim must allege and prove four elements: (1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an

5

adverse employment action because of his disability or perceived disability." *Capobianco v. City of N.Y.*, 422 F.3d 47, 56 (2d Cir. 2005) (citations omitted).

Plaintiff's ADA claim relates to the May 9, 2018 incident. He alleges that when the machine he was working on malfunctioned, he told a team leader that the machine had malfunctioned, that his trainer refused to help him, and that he, plaintiff, was legally blind, that his blood pressure was elevated, and that he had a headache. The team leader left and returned with Bellis, who said to him, "What's the problem?" Plaintiff told Bellis that he had disabilities, that he could not fix the machine because of his impaired vision, and that he was not getting any help. Essentially, plaintiff alleges that Bellis's response was to yell at plaintiff and tell him to "lose the attitude." Plaintiff alleges that he later told Willis what had happened, but his complaints went unaddressed.

In the initial screening decision, Judge Telesca stated, "The Court assumes for the sake of screening that Hendrix has plausibly alleged the first two elements of an ADA claim," and with regard to the third element, that "the Court has construed Hendrix's allegations broadly to assert that he requested assistance with repairing the tape machine when it malfunctioned on May 9, 2018, because he was unable to do it himself due to his vision impairment." 2020 WL 562748, at *6. As to the fourth element, after reciting plaintiff's allegation that an unnamed Pactiv employee had refused to help him and that Bellis did not acknowledge his concerns but instead yelled at him and told him to "lose the attitude," the Court stated that "[f]or purposes of initial screening, the Court will allow the reasonable accommodation claim to proceed." *Id.*

Defendants contend that the ADA claim should be dismissed against them on the ground that plaintiff did not exhaust his administrative remedies. I agree.

"As a condition precedent to bringing a claim under the ADA, a plaintiff must show that [he] exhausted [his] administrative remedies." *Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F.Supp.3d 158, 174 (E.D.N.Y. 2017) (citation omitted). "Exhaustion usually entails filing a charge before the EEOC [Equal Employment Opportunity Commission] or a complaint with a '[s]tate or local agency with authority to grant or seek relief from [the] practice'" of which the plaintiff complains. *Lester v. Mount Pleasant Cottage Sch. Union Free Sch. Dist.*, No. 19-CV-5247, at *5 (S.D.N.Y. July 2, 2020) (quoting *Sworn v. Western N.Y. Children's Psych. Ctr.*, 269 F.Supp.2d 152, 158 (W.D.N.Y. 2003). *See also Soules v. Conn. Dep't of Emer. Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018) (explaining that the plaintiff was required to exhaust administrative remedies with the EEOC or the relevant state administrative agency).

To satisfy the exhaustion requirement, the plaintiff need not necessarily have explicitly raised before the administrative agency the precise claim or claims asserted in the lawsuit. Claims not raised in an administrative charge may be brought in federal court if they are reasonably related to the claim that was filed with the agency. "A claim is considered reasonably related if the conduct complained of would fall within the scope of the [agency's] investigation which can reasonably be expected to grow out of the charge that was made." *Gomez v. N.Y.C. Police Dep't*, 191 F.Supp.3d 293, 299 (S.D.N.Y. 2016) (alterations and citations omitted).

"Failure to exhaust is not an argument regarding the court's jurisdiction but rather an affirmative defense, so 'defendants bear the burden of showing non-exhaustion.'" *Lester*, 2020 WL 3618969, at *5 (quoting *Novick v. Village of Wappingers Falls, N.Y.*, 376 F.Supp.3d 318,

7

336 (S.D.N.Y. 2019)). "But dismissal is appropriate on a motion to dismiss where the 'failure to exhaust is clear from the face of the complaint (and incorporated documents).'" *Id.*[2]

In the case at bar, plaintiff filed a complaint against Pactiv with the New York State Division of Human Rights ("DHR") on August 17, 2018. In that complaint, a copy of which is attached to plaintiff's federal complaint, plaintiff checked the box for disability discrimination, and specified "high blood pressure" as his disability. (Dkt. #6 at 5.) In his written description of the underlying events, plaintiff twice made mention of his blood pressure going up during his confrontation with Bellis. *Id.* at 6. He did not say anything about any problems with his eyesight.

Plaintiff's present allegation that he is "legally blind" is entirely new to this lawsuit. It was not raised in his DHR complaint, nor was it reasonably related to the allegations set forth in that charge. This claim must therefore be dismissed. *See Wicik v. County of Cook*, No. 17 C 6856, 2018 WL 3876584, at *2 (N.D.Ill. Aug. 18, 2018) (claim alleging different disability was not reasonably related to administrative charge); *Davis v. Alhambra Nat. Water Co., Inc.*, No. C-97-3290, 1999 WL 33435, at *1 (N.D.Cal. Jan. 20, 1999) ("allegations of discrimination based

---

[2] There is some case authority in this circuit that appears to suggest that the ADA's exhaustion requirement is jurisdictional. *See*, *e.g.*, *Long v. Corning Inc.*, No. 19-CV-6422, 2020 WL 1467278, at *4 (W.D.N.Y. Mar. 26, 2020) ("A district court only has jurisdiction to hear claims brought pursuant to the ADA that are either contained in the EEOC charge or that are 'reasonably related' to the claims in the EEOC charge") (quoting *Agosta v. Suffolk County*, 981 F.Supp.2d 167, 172 (E.D.N.Y. 2013)).

The Second Circuit has expressly held, however, that "exhaustion is not jurisdictional under [the ADA] and may be waived." *Thompson v. United States*, 795 Fed.Appx. 15, 20 (2d Cir. 2019) (citing *Zerilli-Edelglass v. N.Y.C. Trans. Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003)).

In any event, defendants have not waived an exhaustion defense, and plaintiff's failure to exhaust is evident from the pleadings. Under either approach, therefore, plaintiff's ADA claim is subject to dismissal.

on totally different disabilities from the one mentioned in the [administrative] charge are not 'reasonably related' to the charged allegations").

In addition, plaintiff's complaint in this action does not allege a claim based on his high blood pressure. The gist of his claim is that he had a problem with a machine, that this led to a confrontation with Bellis, and that as a result he perceived that his blood pressure was rising during that confrontation.

Plaintiff has not alleged facts which, if true, would show that his high blood pressure amounted to or was perceived by defendants as a disability, or that he requested but was denied a reasonable accommodation to allow him to perform his job. All he has alleged is that his boss yelled at him and that his blood pressure went up as a result. If that were enough to give rise to an ADA claim, there would be untold numbers of employees who could, at one time or another, state such a claim. That is not the intent behind the statute.

Furthermore, plaintiff has not alleged facts supporting the fourth element of an ADA claim, *i.e.*, that he suffered an adverse employment action because of his actual or perceived disability. Plaintiff has simply alleged that he had some run-ins with his supervisors at Pactiv, and that sometime later, he was let go after he called in absent when his wife went into the hospital. There is no allegation that he suffered an adverse job action because of his high blood pressure.

To the extent that the complaint can be read as asserting an ADA claim based on a hostile work environment, I conclude that such claim is likewise subject to dismissal. In his February 5, 2020 decision, Judge Telesca stated that "[f]or purposes of initial screening only, the Court will

allow the ADA hostile work environment claim to proceed against Pactiv." 2020 WL 562748, at *7.

But as explained above, that decision on initial screening–the purpose of which is intended to weed out obviously meritless or frivolous claims–does not insulate the complaint from later review or a different result. On this Court's review of the complaint, I conclude that plaintiff has failed to state a hostile work environment claim under the ADA.

The Second Circuit has held that claims for hostile work environment are actionable under the ADA. *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019). To state such a claim, plaintiff must allege facts showing that he was subjected to harassment "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment," and "that a specific basis exists for imputing the objectionable conduct to the employer." *Id.* The plaintiff must also allege either a single incident that was extraordinarily severe, or a series of incidents that were sufficiently continuous and concerted to have altered the conditions of his working environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000). "The plaintiff must also allege facts suggesting that the harassing conduct was motivated by animus directed at his disability." *Zako v. Encompass Digital Media, Inc.*, No. 19-cv-844, 2020 WL 3542323, at *13 (D.Conn. June 30, 2020).

Plaintiff has not alleged such facts here. All he has alleged is a single, brief verbal quarrel between him and Bellis, as a result of which plaintiff perceived that his blood pressure was rising. That is far from enough in severity, frequency or duration to state a hostile work environment claim.

**III. Title VII Claim**

The initial screening decision permitted plaintiff to proceed on two claims under Title VII: (1) a hostile work environment claim based on plaintiff's race, and (2) a claim alleging unlawful retaliation. Both these claims must be dismissed.

Title VII claims based on a hostile work environment are assessed according to the same standards as under the ADA. *Zabar v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 6657, 2020 WL 2423450, at *6 n.7 (S.D.N.Y. May 12, 2020). Plaintiff must allege facts showing an environment that is both objectively and subjectively hostile or abusive, and that such environment was created because of some characteristic protected under Title VII. *Foster v. Humane Soc'y of Rochester and Monroe Cty., Inc.*, 724 F.Supp.2d 382, 391-92 (W.D.N.Y. 2010). To state a retaliation claim, the complaint must plead facts showing that (1) plaintiff engaged in a protected activity; (2) the employer was aware of plaintiff's protected activity; (3) plaintiff suffered an adverse employment action; and (4) a causal connection existed between the protected activity and the adverse action. *Id.* at 394-95.

Although plaintiff's factual allegations relating to his Title VII claim are in some respects different from those concerning his ADA claim, they are equally deficient in terms of stating a claim.

The consolidated amended complaint is difficult to decipher, as it comprises a seventy-four-page collection of various papers and documents, arranged in no particular or logical order. But the Court's scrutiny of the complaint does not reveal any facially plausible Title VII claim against Pactiv.

Plaintiff has alleged that he "and other black employees would complain about racism to general manager Todd comfort [sic]," *id.* at 41, who was a Masis, not a Pactiv employee. *See* Screening Decision at 6. Plaintiff alleges that when he and those other (unidentified) black employees would complain to Comfort "about being yelled at and screamed at and insulted" by Pactiv employees, Comfort's "attitude was you are basically working in a predominantly Caucasian /country side area so just deal with it." *Id.* Plaintiff also states that Comfort told him that he, Comfort, was "far removed from Pactiv ... ." *Id.* at 39. Plaintiff alleges that he "complained to both employers that [the alleged harassment] was bringing [his] stress level up and [his] blood pressure up to intolerable, unhealthy levels," but that "[n]othing was done." *Id.* at 41.

Even giving plaintiff's *pro se* complaint a generous construction, it does not state a Title VII claim against Pactiv. Plaintiff has alleged only that he was sometimes yelled at by Pactiv employees, and that he believed that racism played a role in that. In the one incident described in some detail, however, involving the malfunctioning machine, there is nothing suggesting that Bellis's conduct was motivated by racial animus, or that his conduct was severe enough to give rise to a hostile work environment.

Plaintiff's other allegations are too vague and conclusory to support a Title VII claim. Broad, general allegations of racism are not enough. *See Hubert v. Dep't of Correction*, No. No. 19-cv-1323, 2020 WL 4938327, at *14 (D.Conn. Aug. 23, 2020) (dismissing claim where plaintiff "failed to 'allege or set forth any facts that defendant's acts or conduct affected the terms and conditions of her employment–an essential element of a hostile work environment claim'") (quoting *Dechberry v. N.Y.C. Fire Dep't*, 124 F.Supp.3d 131, 158 (E.D.N.Y. 2015) (additional

internal quotes and alterations omitted); *Sosa v. N.Y.C. Dep't of Educ.*, 368 F.Supp.3d 489, 516 (E.D.N.Y. 2019) (dismissing Title VII hostile work environment claim, and explaining that the plaintiff "must make some non-conclusory allegation that suggests that the conduct that is the basis of the hostile work environment was as a result of her race or skin color").

In his response to the motion to dismiss, plaintiff states that he endured yelling and screaming "at the hands of older Caucasian male team leaders," and that "it was very rare for them to raise their voice at a Caucasian colleague." (Dkt. #29 at 15.)

That is not enough to save plaintiff's complaint from dismissal. First, the Court must "test the sufficiency of a *complaint* in response to a Rule 12(b)(6) motion to dismiss, and '[a] party is not entitled to amend its complaint through statements made in motion papers.'" *D'Alessandro v. City of New York*, 713 Fed.Appx. 1, 11 n.12 (2d Cir. 2017) (citing *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92, 94 (2d Cir. 2017), and quoting *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)).

Second, even if the Court were to consider plaintiff's additional allegations, they add nothing of substance to his claims. Plaintiff has not alleged any specific facts supporting his broad claim that white team leaders yelled at him and other black employees more often than they yelled at white employees. That bare allegation, without *some* specifics or factual context, is insufficient to state a claim. While plaintiff need not plead detailed evidence, he must nevertheless at the pleading stage present more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" to survive a motion to dismiss. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). *See also Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (to defeat a 12(b)(6) motion, the facts alleged must provide "at least

minimal support for the proposition that the employer was motivated by discriminatory intent"). He has not done so.

With respect to the retaliation claim, the law is clear that, "[u]nlike Title VII discrimination claims, to which a 'motivating-factor standard' of causation applies, retaliation claims require proof that retaliation was the 'but-for' cause of the adverse action." *Philpott v. SUNY*, 805 Fed.Appx. 32, 34 (2d Cir. 2020) (citing *Univ. of Texas SW Med. Ctr. v. Nassar*, 570 U.S. 338, 359-60 (2013)). *Accord Ninying v. N.Y.C. Fire Dep't*, 807 Fed.Appx. 112, 115 (2d Cir. 2020); *Witek v. City of New York*, 807 Fed.Appx. 52, 55 (2d Cir. 2020). Despite the solicitude afforded *pro se* litigants, that rule applies no less to them. *See*, *e.g.*, *Meagher v. State Univ. Constr. Fund*, No. 17-CV-903, 2020 WL 5504011, at *17-*19 (N.D.N.Y. Sept. 11, 2020); *Farmer v. Patino*, No. 18-CV-1434, 2020 WL 5342592, at *7 (E.D.N.Y. Sept. 4, 2020).

Plaintiff has not met that standard. Plaintiff has not alleged that he complained to anyone at Pactiv about racial discrimination. He allegedly had a brief confrontation with Bellis on May 9, and was terminated two months later, but there are no allegations even suggesting that his termination could have been retaliation for plaintiff's having complained to Pactiv about race discrimination. Plaintiff has alleged neither protected activity with respect to Pactiv nor any facts indicating a retaliatory motive on defendants' part. *See Dhar v. City of New York*, 655 Fed.Appx. 864, 865 (2d Cir. 2016) ("To withstand a motion to dismiss, a plaintiff must identify a protected activity and an adverse employment action and plead facts sufficient to 'give plausible support to a minimal inference of discriminatory motivation'") (quoting *Littlejohn*, 795 F.3d at 311); *Obi v. Westchester Med. Reg'l Physician Servs., P.C.*, No. 19-cv-3022, 2020 WL 1434159,

at *6 (S.D.N.Y. Mar. 23, 2020) (plaintiff must allege facts sufficient to allow the court to infer the defendant's intent to discriminate on the basis of race).

Plaintiff's vague allegation that he complained about racism to Comfort is insufficient. Comfort did not work at Pactiv, there is no indication that Comfort passed those complaints on to Pactiv, and Comfort does not appear to have played any role in Pactiv's decision to terminate plaintiff. In fact, based on plaintiff's allegations, Comfort's response was essentially to distance himself from anything going on at Pactiv.

**IV. Section 1981 Claims**

Plaintiff has also brought claims of hostile work environment and retaliation under 42 U.S.C. § 1981, which "outlaws [race] discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004). "[A]n at-will employment agreement governed by New York law constitutes a 'contract' within the meaning of 42 U.S.C. § 1981." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68 (2d Cir. 2000) (citation omitted).

These claims are governed by the same general standards that apply to such claims under Title VII. *See Taitt v. Chem. Bank*, 849 F.2d 775, 777 (2d Cir. 1988); *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir. 1987). In the case at bar, plaintiff's § 1981 claims therefore fail for the same reasons stated with respect to his Title VII claims, as well as for some additional reasons.

In the case at bar, the DHR found no probable cause to believe that Pactiv had engaged in the unlawful discriminatory practices alleged by plaintiff. In its decision, the DHR set forth

specific factual findings in support of its conclusion that plaintiff was not unlawfully discriminated or retaliated against.  *See* CAC at 8-9.

The law in this circuit is that DHR findings of no probable cause are given preclusive effect in a judicial § 1981 claim based on the same facts.  *See DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 118 n.13 (2d Cir. 1987).  *See*, *e.g.*, *James v. City of New York*, No. 01 Civ. 30, 2003 WL 21991591, at *4 (S.D.N.Y. Aug. 20, 2003) (DHR determination of no probable cause had preclusive effect on § 1981 claim).  Such preclusion applies unless the plaintiff establishes that he did not have an adequate opportunity to litigate the issues in question before the DHR.  *See DeCintio*, 821 F.2d at 116-17 (holding that DHR "no probable cause" determination precluded § 1981 claim where plaintiff failed to "establish[ ] that he did not have a full and fair opportunity to litigate" before the DHR).

The DHR's decision on plaintiff's administrative complaint states that the decision was reached "[a]fter investigation, and following opportunity for review of related information and evidence by the named parties ... ."  *See* Complaint at 8-9.  Plaintiff has identified no facts suggesting that during the administrative process, he lacked a full and fair opportunity to litigate his claims.

In addition, the United States Supreme Court has recently held that a plaintiff bringing a claim under § 1981 must plead that race was a but-for cause of the adverse action.  *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, __ U.S. __, 140 S. Ct. 1009, 1019 (2020).  As explained with respect to plaintiff's Title VII claims, plaintiff has not done so.  For all these reasons, then, his § 1981 claims must be dismissed.

**V. HRL Claims**

While my dismissal of plaintiff's claims based on federal law renders it unnecessary for the Court to reach his claims under state law, in the interests of judicial economy I do so, since the law is abundantly clear that the state law claims must be dismissed as well.

Under New York law, an individual who files a complaint with the DHR is jurisdictionally barred from filing a lawsuit in state or federal court for the same claims, seeking relief under the HRL. *See* N.Y. Exec. Law § 297(9); *see also DuBois v. Macy's Retail Holdings, Inc.*, 533 Fed.Appx. 40, 41 (2d Cir. 2013) ("the election of remedies doctrine under ... the [HRL] precludes a plaintiff from pursuing his discrimination claims in a court of law when the same claims were previously brought before a local administrative agency").

Courts have interpreted "same claims" to mean those arising out of the same incidents or "operative events" on which the DHR complaint was based. *See Chakraborty v. Soto*, No. 16-CV-9128, 2017 WL 5157616, at *81 (S.D.N.Y. Nov. 6, 2017); *see*, *e.g.*, *Yong Chul Son v. Chu Cha Lee*, 559 Fed.Appx. 81, 82 (2d Cir. 2014) (affirming dismissal of HRL claims when DHR had reviewed HRL and Title VII claims based on the same facts); *McCalla v. City of New York*, No. 15-CV-8002, 2017 WL 3601182, at *37 (S.D.N.Y. Aug. 14, 2017) ("[The] election of remedies [doctrine] is not limited to the precise claims brought in the administrative proceeding, but extends to all claims arising out of the same events") (citation and internal quotation marks omitted), *report and recommendation adopted*, No. 15-CV-8002, 2017 WL 4277182 (S.D.N.Y. Sept. 22, 2017).

Because the bar is jurisdictional, claims dismissed pursuant to the election-of-remedies doctrine "must be dismissed under Fed.R.Civ.P. 12(b)(1) rather than 12(b)(6)." *Higgins v. NYP*

*Holdings, Inc.*, 836 F.Supp.2d 182, 187 (S.D.N.Y. 2011) (citing *Moodie v. Fed. Reserve Bank*, 58 F.3d 879, 882 (2d Cir. 1995)).[3]  These claims are therefore dismissed for lack of subject matter jurisdiction.

## CONCLUSION

The motion to dismiss brought by defendants Pactiv LLC, Alan Bellis and Larissa Willis (Dkt. #25) is granted, and the complaint is dismissed with prejudice as to those three defendants.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       September 21, 2020.

---

[3] Although there are two primary exceptions to the election of remedies doctrine, neither applies here. Plaintiff's DHR complaint was dismissed on the merits, and not for "administrative convenience," *see York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 127 n.2 (2d Cir. 2002), and his DHR complaint was dual filed with the DHR and the EEOC.  In other words, it was not filed only with the EEOC and then referred by that agency to the DHR.  *See id.*; *Williams v. City of New York*, 916 F. Supp. 2d 517, 522-23 (S.D.N.Y. 2013).